IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**MARK A. WESKER,**

      *Plaintiff,*

  **v.**

**SELECT PORTFOLIO SERVICING, INC.,**
***et al.*,**

      *Defendants.*

**Civil No. 1:21-cv-03012-JRR**

## <u>MEMORANDUM OPINION</u>

This matter comes before the court on Defendants Select Portfolio Servicing Inc. ("SPS") and Onslow Bay Financial LLC's Motion to Dismiss Plaintiff's Amended Complaint. (ECF No. 32; the "Motion.") The court has reviewed all papers. No hearing is necessary. Local Rule 105.6 (D. Md. 2023).

## I.  <u>BACKGROUND</u>[1]

Plaintiff Mark Wesker is a citizen of the State of Maryland. (ECF No. 31 ¶ 4.) Defendant SPS is a Utah corporation with its principal place of business in Salt Lake City, Utah. *Id.* ¶ 5. Defendant Onslow Bay Financial LLC is a New York limited liability company with its principal place of business in New York, New York. *Id.* ¶ 6.

In or around August 2000, Plaintiff and his wife purchased unimproved real estate property in Reisterstown, Maryland. (ECF No. 31 ¶ 9.) "On or about August 1, 2005, Plaintiff executed a Fixed/Adjustable Rate Note in the amount of $1,000,000 ("Note"), payable to Merrill Lynch Credit

---

[1] For purposes of this memorandum, the court accepts as true the well-pled facts set forth in the Amended Complaint. (ECF No. 31.)

Corporation, as the lender, collectively with all loan documents ("Mortgage")." *Id.* ¶ 10.  As of January 2019, Onslow Bay has been the current holder of the Mortgage.  *Id.* ¶ 12.  As of February 2019, SPS has been the servicer of the Mortgage.  *Id.* ¶ 13.  This action arises from Defendants' alleged "inability to properly solicit, analyze, and decide upon Plaintiff's application for basic mortgage assistance."  *Id.* ¶ 1.

Plaintiff alleges that Defendants advertised a mortgage assistance program to him on numerous occasions.  (ECF No. 31 ¶ 15.)  On or about February 22, 2019, Plaintiff applied for a mortgage modification through the mortgage assistance program and submitted the required documents.  *Id.* ¶ 16.  Plaintiff alleges that he applied "in accordance with SPS's standard process for requesting mortgage assistance during periods of financial difficulty."  *Id.*

On March 1, 2019, Plaintiff provided additional documents for his mortgage modification application.  (ECF No. 31 ¶ 16.)  On various subsequent occasions, SPS notified Plaintiff that he had not submitted sufficient and/or all the required documents.  *Id.* ¶¶ 16, 19-23.  Plaintiff alleges that SPS continually requested the same documentation he had already submitted.  *Id.* ¶ 22.  On June 10, 2019, SPS acknowledged receipt of Plaintiff's complete application and advised that the review would be completed within 30 days.  *Id.* ¶ 24.  On June 24, 2019, however, Plaintiff was notified again that his previous document submission was insufficient, and that SPS required additional documents.  *Id.*  On June 27, 2019, Plaintiff submitted the same documentation for the fourth time.  *Id.*

While Plaintiff's mortgage modification application was pending, Plaintiff availed himself of the SPS policy that "all due dates for mortgage payments during the period of consideration of the application [are] suspended."  (ECF No. 31 ¶ 18.)

On July 30, 2019, SPS notified Plaintiff that his request for mortgage assistance was denied.  (ECF No. 31 ¶ 25.)  Specifically, with regard to the denial letter, Plaintiff alleges:

> SPS offered that Plaintiff could pay the prior five months' payments over the next twelve months, which would have increased his $5,374 to $8,053 per month, a $2,679.00 increase of approximately 50% per month for the next twelve (12) months. Never acknowledging its own incompetence and inexplicable 125-plus day delay in processing Plaintiff's basic and routine request for mortgage assistance, SPS nevertheless mandated that Plaintiff accept the draconian repayment plan to reconcile an arrearage caused entirely by Defendants' own failures. To add insult to injury, SPS required Plaintiff, which it knew had suffered significant financial hardship, to accept the excessively expensive 12-month repayment plan of $8,053 by August 23, 2019. If Plaintiff did not do so, SPS stated that it would consider the demand rejected.

*Id.* ¶ 27.

On August 9, 2019, Plaintiff appealed Defendants' denial of his modification application and "challenged the underlying assumptions for the rejection decision."  (ECF No. 31 ¶ 29.)  On August 30, 2019, SPS denied the appeal and "advised Plaintiff that SPS was unable to offer a 'Trial Modification' of the mortgage payment amounts because Onslow Bay's investors had not given SPS the contractual authority to modify the Mortgage in the first place."  *Id.* ¶ 30.  The next day, Plaintiff called SPS about the denial of his application and spoke with an SPS supervisor who informed him that "despite the repeated correspondence regarding missing documentation to support the mortgage assistance application, as well as the initial invitation to apply for mortgage assistance, Plaintiff was never eligible for a modification at all because Onslow Bay purchased the Mortgage as a 'will not modify mortgage.'"  *Id.* ¶ 31.  After informing Plaintiff that his mortgage was not eligible for modification, on October 3, 2019, SPS again invited Plaintiff to apply for a mortgage modification even though SPS had previously rejected his application on the grounds that his Mortgage did not qualify.  (ECF No. 31 ¶ 33.)

On December 29, 2019, SPS advised Plaintiff that the matter of his mortgage arrearages had been referred to an outside attorney for collection; however, SPS inquired whether Plaintiff wanted to renew a request for mortgage assistance, so that he could remain on the Property. *Id.* ¶ 34. Plaintiff relayed to SPS that he had been advised that he was ineligible for a modification, but nonetheless he resubmitted the mortgage assistance application. *Id.* On December 31, 2019, Plaintiff received correspondence from a debt collection law firm advising him that the Mortgage loan was in default, the loan was being accelerated, and further legal action would be taken. *Id.* ¶ 35. Plaintiff alleges that Defendants' false assertions that he had defaulted on his Mortgage for failing to make payments resulted in negative credit reporting which damaged Plaintiff's credit. *Id.* ¶ 37.

On January 31, 2020, SPS approved, on a trial basis, Plaintiff's request for a mortgage modification.[2] (ECF No. 31 ¶ 36.) Plaintiff alleges that SPS stated he would be eligible for a permanent modification if he made three successive mortgage payments on March 1, 2020, April 1, 2020, and May 1, 2020, in the amounts of $3,917.73. *Id.* Plaintiff agreed to the trial modification on the condition that the negative reporting that had damaged his credit was removed.[3] *Id.* ¶ 37. SPS rejected Plaintiff's proposal. *Id.* ¶ 38.

Plaintiff expressed his dissatisfaction to Defendants about their "unwillingness to remove the improper negative credit report," but informed Defendants that, beginning on March 1, 2020, he would deposit the modified mortgage payment into an escrow account each month, pending resolution of the matter. (ECF No. 31 ¶ 39.) Plaintiff alleges that, as of the date of this action

---

[2] Plaintiff alleges that SPS approved his February 2019 application, not the application he submitted in December 2019. (ECF No. 31 ¶ 36.)

[3] The basis for Plaintiff's request was "that he should have been approved for the modification now being offered in March 2019, and this entire protracted matter could have (and should have) been avoided, but for Defendants' inability to properly evaluate Plaintiff's assistance application, correctly determine the Mortgage's eligibility for modification, and ultimately make a timely decision on the request." (ECF No. 31 ¶ 37.)

(November 23, 2021), he has deposited $62,683.73 in escrow for the mortgage payments due from March 2020 to July 2021.  *Id.* ¶ 40.

In August 2021, SPS advised Plaintiff it was unwilling to "retract the negative credit reporting currently on his account" and, therefore, was unwilling to resolve the matter short of litigation; in response, Plaintiff made no further escrow payments.  *Id.*  Plaintiff alleges that he made the full payments due under the Mortgage for 15 months (March 2020 to June 2021), but Defendants refused to remove the negative credit reporting.  *Id.* ¶¶ 40-41.   Plaintiff alleges further that he is not, and was never, in default of the Mortgage.  *Id.*  Since March 2020, he has attempted to speak with Defendants about the negative credit reporting, but they have refused to engage in discussions with him.  (ECF No. 31 ¶ 42.)

Plaintiff alleges that he "has, at all times, offered to make all payments due under the Mortgage to Defendants, so long as the erroneous and unsubstantiated negative credit reporting (which was caused by Defendants, not Plaintiff) was removed;" and "[b]ut for Defendants' negligence, willful disregard of their own policies and procedures, and related misconduct, (i) Plaintiff's credit would have remained without material delinquencies, (ii) Plaintiff would not have accrued additional interest and late fees, (iii) Plaintiff would not be in default under the terms of the Mortgage; and (iv) Plaintiff would not have suffered any financial damage whatsoever."  *Id.* ¶¶ 44, 47.

On November 23, 2021, Plaintiff filed the instant action.  (ECF No. 1.)  On June 9, 2022, Plaintiff filed an Amended Complaint.  (ECF No. 31.)  The Amended Complaint sets forth eight counts: (I) Professional Negligence; (II) Negligent Misrepresentation; (III) Fraudulent Misrepresentation; (IV) Fraudulent Inducement; (V) Detrimental Reliance; and (VI) Negligent Violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*; (VII) Willful

Violation of the FCRA, 15 U.S.C. §§ 1681, *et seq.*; and (VIII) Violation of Maryland's Consumer Protection Act ("MCPA"), MD. CODE ANN., COM. LAW §§ 13-301, *et seq.*  (ECF No. 31 at pp. 12-21.)  The prayer for relief seeks: (i) actual damages; (ii) statutory damages; (iii) an injunction prohibiting any further negative credit reporting by Defendants; (iv) reasonable attorneys' fees, and (v) any other relief this court deems just and proper.

Defendants move to dismiss on several grounds: (1) Plaintiff's negligence claims—Counts I and II—fail because Defendants did not owe Plaintiff a duty as a matter of law; (2) Plaintiff's fraud claims—Counts III and IV—fail to satisfy the heightened pleading standard of Rule 9(b); (3) Plaintiff's detrimental reliance claim—Count V—fails to allege any clear and definite promise; (4) the FCRA claims—Counts VI and VII—fail because Plaintiff's allegations show that Defendants reported accurate information; and (5) the MCPA claim—Count VIII—fails because Plaintiff's allegations do not establish a deceptive trade practice.  (ECF No. 32 at pp. 5-7, 9, 13, 14, 16.)

## II.   LEGAL STANDARDS

### A.   Federal Rules of Civil Procedure 8(a) and 12(b)(6)

Pursuant to Rule 8(a), "[a] pleading that states a claim for relief must contain . . .  a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a).  "In 2007, the Supreme Court of the United States set forth a new standard to be applied in assessing whether, under Rule 8(a)(2), a claim was articulated sufficiently to permit a court to conclude that, if its allegations were proved, relief could be granted.  In so doing, the Supreme Court retired the standard of sufficiency under Rule 8(a)(2) that was set in *Conley v. Gibson*, 355 U.S. 41, [] (1957)."  *Macronix Int'l Co., Ltd. v. Spansion, Inc.,* 4 F. Supp. 3d. 797, 799 (E.D. Va. 2014).  The *Conley* Court explained the requirements for a legally sufficient complaint as follows:

6

> The decisive answer to this is that the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' [citing Rule 8(a)(2)] that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. The illustrative forms appended to the Rules plainly demonstrate this.

*Conley v. Gibson*, 355 U.S. at 48.

"In *Twombly*,[4] the Court changed significantly how the legal sufficiency of a claim is to be measured when it is attacked under Rule 12(b)(6).  As one eminent scholar of federal civil procedure has said of *Twombly*: 'Notice pleading is dead.  Say hello to plausibility pleading.'" *Macronix,* 4 F. Supp. 3d at 799-800 (quoting A. Benjamin Spencer, *Plausibility Pleading*, 49 B.C. L. REV. 431, 431-32 (2008)).  The "liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2) has been decidedly tightened (if not discarded) in favor of a stricter standard requiring the pleading of facts painting a 'plausible' picture of liability."  *Id.; see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 262 (4th Cir. 2009) (Jones, J., concurring in part, dissenting in part, and remarking that "*Twombly* and *Iqbal*[5] announce a new, stricter pleading standard.")

Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp., v. Twombly,* 550 U.S. 544, 555 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citing *Twombly*, 550 U.S. at

---

[4] *Bell Atl. Corp., v. Twombly,* 550 U.S. 544 (2007)
[5] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

556).  "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief."  *Id.* (citing FED. R. CIV. P. 8(a)(2)).

"The purpose of Rule 12(b)(6) is to test the sufficiency of a complaint' and not to 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'"  *Presley v. Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999)).  Accordingly, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief."  *Edwards*, 178 F.3d at 244 (citing *Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992)).  The court, however, is ". . . not required to accept as true the legal conclusions set forth in a plaintiff's complaint."  *Id.* (citing *District 26, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.,* 609 F.2d 1083, 1085 (4th Cir. 1979)).

### B.     Federal Rule of Civil Procedure 9(b)

"Rule 9(b) requires particularity when pleading 'fraud or mistake,' while allowing 'malice, intent, knowledge, and other conditions of a person's mind to be alleged generally.'"  *Ashcroft*, 556 U.S. at 686. A plaintiff "must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  *Bourgeois*, 3 F. Supp. 3d at 435 (quoting *U.S. ex rel. Owens v. First Kuwaiti Gen'l Trading & Contracting Co.*, 612 F.3d 724, 731 (4th Cir. 2010)).  "Claims that sound in

fraud, whether rooted in common law or arising under a statute, implicate the heightened standard of Rule 9(b)." *Layani v. Ouazana*, No. 20-420, 2021 U.S. Dist. LEXIS 39894, at *61 (D. Md. Mar. 3, 2021); *see Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013) (quoting FED. R. CIV. P. 9(b) and holding that "the MCPA claim, which sounds in fraud, is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b), which requires a plaintiff to plead 'with particularity the circumstances constituting fraud'"). Rule 9(b) serves four purposes:

> First, the rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of . . . . Second, Rule 9(b) exists to protect defendants from frivolous suits. A third reason for the rule is to eliminate fraud actions in which all the facts are learned after discovery. Finally, Rule 9(b) protects defendants from harm to their goodwill and reputation.

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (citation omitted). "A court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Id.*

## III.   **CONSIDERATION OF EXHIBITS**

As an initial matter, Defendants attach two exhibits to the Motion: Exhibit A—Fixed/Adjustable Rate Note (ECF No. 32-2, the "Note") and Exhibit B—Deed of Trust. (ECF No. 32-3.)

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a court usually does not consider evidence outside of the complaint. A court may consider documents attached to a motion to dismiss if the document is "integral to and explicitly relied on in the complaint and [if] the plaintiffs

do not challenge its authenticity." *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.,* 190 F.3d 609, 618 (4th Cir. 1999)). "An integral document is a document that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found. Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d. 602, 611 (D. Md. 2011) (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)). "In addition to integral and authentic exhibits, on a 12(b)(6) motion the court 'may properly take judicial notice of matters of public record.'" *Id.* (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).

The exhibits provided by Defendants set forth the chain of assignments, duties, and obligations of the parties with respect to the Promissory Note and Deed of Trust. The court may properly consider the Promissory Note, as it is referenced in the Amended Complaint, integral to the parties' relationship, and Plaintiff alleges that his negligence claim arises, in part, based on the parties' existing mortgagee/mortgagor relationship. Further, Plaintiff does not dispute its authenticity. The court may also consider the Deed of Trust, as it is a public record of which the court may take judicial notice and Plaintiff does not challenge its authenticity. There court will therefore consider the exhibits without converting the Motion to one for summary judgment.

## IV.   <u>ANALYSIS</u>

### A.   <u>Negligence Claims – Counts I and II</u>

Defendants argue that Plaintiff's negligence claims fail because Defendants do not owe a tort duty to Plaintiff. (ECF No. 32-1 at 6.)

"In Maryland, causes of action based on negligence or negligent misrepresentation require the plaintiff to prove a duty owed" by the defendant to the plaintiff. *Spaulding v. Wells Fargo Bank, N.A.*, 920 F. Supp. 2d 614, 620 (D. Md. 2012) (citing *Jacques v. First Nat'l Bank of*

*Maryland*, 307 Md. 527, 531 (1986)). "Plaintiff[] cannot, therefore, allege actionable claims of negligence and negligent misrepresentation without first demonstrating [Defendants] owed [him] a duty in tort." *Id.* "Whether a legal duty exists between parties is a question of law." *H&M Co., Inc. v. Technical Heat Transfer Servs., Inc.*, No. TDC-14-1518, 2015 WL 1472000, at *5 (D. Md. Mar. 30, 2015). Because Plaintiff's claims for professional negligence and negligent misrepresentation involve the same alleged course of conduct by Defendants, the court will address the claims together as to the duty element.

### 1.    *Duty*

Relying on several cases,[6] Defendants argue that "in the context of the mortgage loan modification process, the mortgage holder/servicer does not have a duty to the borrower until there is a contractually binding agreement to modify." (ECF No. 32-1 at 7.)  In response, Plaintiff,

---

[6] Defendants direct the court's attention to several cases in which courts have found that a mortgagee does not have a duty to the borrower with regard to a loan modification application absent a contract to modify the loan. (ECF No. 32-1 at 7; citing *Wesker v. Bank of America, N.A.*, No. SAG-21-03319, 2022 WL 4608330 (D. Md. Sept. 30, 2022), *Ensor v. Wells Fargo Bank National Association*, No. CCB-21-324, 2022 WL 345513 (D. Md. Feb. 4, 2022), *Goss v. Bank of America, N.A.*, 917 F. Supp. 2d 445 (D. Md. 2013), *Green v. Wells Fargo Bank, N.A.*, 927 F. Supp. 2d 244 (D. Md. 2013), and *Farasat v. Wells Fargo Bank, N.A.*, 913 F. Supp. 2d 197 (D. Md. 2012)).  In each of these cases, the court determined that the intimate nexus test was not satisfied because the plaintiff failed to allege facts to support contractual privity as to the loan modification application or its equivalent, as required by *Jacques v. First Nat'l Bank of Md.*, 307 Md. 527 (1986).  *See Green*, 927 F. Supp. 2d at 252 (dismissing the plaintiffs' negligence and negligent representation claims because "[t]he contractual relationship cited by [the] [p]laintiffs, however, is the underlying mortgage, and there are no allegations of negligence arising from that contract.  Rather, [the] [p]laintiffs' allegations relate to [the] [d]efendant's negligent processing, or failure to process, their request for loan modification, which was an entirely different transaction"); *Spaulding*, 920 F. Supp. 2d at 621 (concluding that "[n]o tort duty [] could arises as a matter of law" because "[t]he [p]laintiffs and Wells Fargo did not enter into any implied or express contract"); *Goss*, 917 F. Supp. 2d at 452 (dismissing the plaintiffs' negligence and negligent misrepresentation claims because "the letter and subsequent actions of [the bank] did not even create an enforceable contract or other nexus between [the bank] and the [plaintiffs]," beyond their mortgage agreement," therefore, the bank "owed no duty in tort to them in the processing of their [Home Affordable Modification Program] application"); *Wesker*, 2022 WL 4608330, at *3 (dismissing plaintiffs' negligence and negligence misrepresentation claims because there were no allegations "to support contractual privity with respect to a modification or adjustment to their loan contract, and accordingly [plaintiffs] are subject to the general rule that there is no tort duty between a bank and its customer"); *Ensor*, 2022 WL 345513, at *3-4  (denying plaintiff's motion to amend on the basis that he failed to allege contractual privity or special circumstances related to his mortgage modification application that defendant denied); *Farasat*, 913 F. Supp. 2d at 207-208 (dismissing plaintiff's negligence and negligent misrepresentation claims because the bank does not owe plaintiff a duty in connection with alleged negligence arising loan modification application processing).  While instructive, as discussed in Section IV.A.1., *supra*, the facts of the instant case materially differ.  Plaintiff's negligence claims do not relate solely to Defendants' processing and handling of the loan modification application.

relying on *Jacques v. First National Bank of Maryland*, maintains that "[t]he circumstances of the Defendants' conduct toward the Plaintiff, with whom they had an existing customer relationship, constitute 'special circumstances' which warrant the imposition of a duty of care to use reasonable care in the processing of the loan modification application and their communications with the Plaintiff." (ECF No. 34 at 7; *Jacques v. First Nat'l Bank of Md.*, 307 Md. 527, 532 (1986)).

In *Jacques*, the Maryland Supreme Court addressed "whether a bank that has agreed to process an application for a loan owes to its customer a duty of reasonable care in the processing and determination of that application." 307 Md. at 528. The *Jacques* court explained:

> In determining whether a tort duty should be recognized in a particular context, two major considerations are: the nature of the harm likely to result from a failure to exercise due care, and the relationship that exists between the parties. Where the failure to exercise due care creates a risk of economic loss only, courts have generally required an intimate nexus between the parties as a condition to the imposition of tort liability. This intimate nexus is satisfied by contractual privity or its equivalent. By contrast, where the risk created is one of personal injury, no such direct relationship need be shown, and the principal determinant of duty becomes foreseeability.
>
> Because the harm likely to result from negligent processing of a loan application is limited to economic loss, we examine carefully the relationship that existed between these parties.
>
> [T]ort obligations of conduct are imposed by reason of the relation in which the parties stand toward one another; and in determining that relation, the law will often take into account what has been agreed between them, either to increase the actor's responsibility or to lessen it, so that the tort duty finally fixed may coincide with that set by a contract, and for its breach either a contract or a tort action will lie.

*Id.* at 534-35 (internal citations omitted).

In *Jacques*, the defendants argued that "there was no contract, and therefore no legal relationship between it and the [plaintiffs] at the time of the [defendant's] alleged negligence."

*Jacques*, 307 Md. at 537.   The *Jacques* court disagreed and found that the plaintiffs and the defendant formed a contract because the bank made two express promises to the plaintiffs: "[i]t agreed first to process their loan application and second to 'lock in' the interest rate of 11⅞% for a period of ninety days."   *Id.* at 537.   Further, the two promises were supported by consideration such that the defendant agreed to process the loan application in exchange for the plaintiffs paying for the appraisal and credit report.   *Id.*   Moreover, the *Jacques* court explained

> . . . this agreement to process the loan application was intended to, and did, result in a business advantage to the Bank. In the competitive business of seeking out borrowers for the purpose of making loans that would bring a profit to it, the Bank offered an inducement in the form of a guaranteed interest rate for ninety days. When the Jacques accepted that offer by paying the required fee and submitting the loan application documents, the Bank obtained a business advantage and potential benefits sufficient to support its promise.

> The inducement of a guaranteed rate of interest for a period of ninety days, especially in a time of fluctuating interest rates, clearly is intended to entice the customer to deal with the offering bank rather than with some other lender. Although the customer does not covenant that he will refrain from simultaneously making application with other lenders, we think the practicalities of the home loan market, and particularly the expense of each application, have the effect of at least temporarily taking the customer out of the market. As a greater number of loan applications may be expected to result in a greater number of loans, and thus a greater profit, the business advantage to the bank is real even though every application will not lead to a profit.

*Id.* at 537-38 (internal quotations omitted).   After finding that a contract was created between the parties that also included an implied promise to use reasonable care, the *Jacques* court analyzed "whether a concomitant tort duty should be recognized in the circumstances."   *Id.* at 540.

In analyzing the tort duty, the *Jacques* court examined the relationship between the parties and noted that special circumstances existed, specifically (1) the "extraordinary financing provisions contained in the real estate sales contract" left the plaintiffs' vulnerable to risk and

dependence upon accurate loan processing with which the bank was aware; and (2) the public interest involving the banking business.  307 Md. at 540-43.  Accordingly, the court concluded that under the particular facts of the case, the bank owed the plaintiff a duty of reasonable care in processing and determining their loan application.  *Id.* at 528.

In *Spaulding v. Wells Fargo Bank N.A.*, the court noted that *Jacques* represents "a narrow exception to the general rule that Maryland does not recognize negligence actions that arise solely out of a contractual relationship."  920 F. Supp. 2d 614, 621 (D. Md. 2012).  The *Spaulding* court succinctly explained:

> It is well established in Maryland that the relationship between the bank and borrower is contractual, not fiduciary, in nature. Moreover, "[t]he mere negligent breach of a contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort." In cases involving economic loss, the imposition of tort liability requires "an intimate nexus between the parties" that is satisfied by "contractual privity or its equivalent." Absent special circumstances, the court is reluctant to "transform an ordinary contractual relationship between a bank and its customer into a fiduciary relationship or to impose any duties on the bank not found in the loan agreement."

920 F. Supp. 2d at 620 (internal citations omitted); *see Davis v. Bank of America, N.A.*, No. ELH-19-1010, 2019 WL 4958060, at *8 (D. Md. Oct. 8, 2019) (explaining that "a contractual relationship may provide the basis of an alleged breach of duty"); *Neal v. Residential Credit Sols., Inc.*, JKB-11-3707, 2013 WL 428675, at *5 (D. Md. Feb. 1, 2013) (finding a duty of care where the negligence arose from an existing contractual relationship); *see also H&M Co., Inc.*, 2005 WL 1472000, at *6 (examining "the parties' relationship to determine whether the [c]omplaint plausibly alleges that an equivalent intimate nexus existed between [the parties] to establish a basis for tort liability").

In analyzing whether special circumstances exist, the court finds guidance from *Parker v. Columbia Bank*, 91 Md. App. 346, 396 (1992).  The *Parker* court noted that "special circumstances 'may' exist where 'the bank knows or has reason to know that the customer is placing his trust and confidence in the bank and relying on the bank to counsel and inform him.'"  *Id.* (quoting *Klein v. First Edina Nat'l Bank*, 293 Minn. 418, 196 N.W.2d 619, 623 (1972)).  Additionally, relying on *Tokarz v. Frontier Federal Sav. & Loan Ass'n*, 33 Wash. App. 456, 656 P.2d 1089 (1982), the *Parker* court explained that special circumstances may also arise when "the lender '(1) took on any extra services on behalf of [the borrowers] other than furnishing the money for construction of a home; (2) received any greater economic benefit from the transaction other than the normal mortgage; (3) exercised extensive control over the construction; or (4) was asked by [the borrowers] if there were any lien actions pending.'"  *Parker*, 91 Md. App. at 370-71 (quoting *Tokarz*, 33 Wash. App. at 462).  With this mind, the court is also mindful that courts are generally "reluctant to transform the lender-borrower relationship [] into a fiduciary relationship or to otherwise impose duties on [the defendants] beyond those found in the parties' loan agreements."  *Donnelly v. Branch Banking and Trust Co.*, 971 F. Supp. 2d 495, 508 (D. Md. 2013).

In analyzing whether the intimate nexus test is satisfied by either contractual privity or its equivalent in the instant case, *see Jacques and Spaulding, supra,* the court finds instructive *Dwoskin v. Bank of America, N.A.*, 850 F. Supp. 2d 557 (D. Md. 2012) and *Donnelly v. Branch Banking and Trust Co.*, 971 F. Supp. 2d 495 (D. Md. 2013).

The *Dwoskin* court found that the plaintiffs satisfied the intimate nexus test by the equivalent of contractual privity.  850 F. Supp. 2d 557, 571 (D. Md. 2012).  There, the plaintiffs alleged that they accepted the defendant's mortgage loan terms, including the defendant's assurance that "their loan was truly no fee and that no PMI [private mortgage insurance] would be

required." *Id.* at 562.  Subsequently, the plaintiffs learned that the defendant "had paid for LMPI

[lender-paid mortgage insurance] on their home without their knowledge or consent." *Id.* at 563.

In denying the defendant's motion to dismiss the plaintiffs' negligent misrepresentation

claim, the *Dwoskin* court explained:

> When dealing with claims of economic loss due to negligent
> misrepresentation, a plaintiff must prove the defendant owed a duty
> of care by demonstrating an intimate nexus between them. This
> nexus can be demonstrated by showing contractual privity or its
> equivalent. The equivalent has been found in special relationships
> consummated during the course of pre-contract negotiations.
>
> Courts have long found that liability can arise when there is a duty
> "to give the correct information." Such a duty exists in a variety of
> business relationships. *See, e.g., Griesi*, 360 Md. at 17, 756 A.2d at
> 556 (finding an intimate nexus existed during extensive but arms-
> length pre-employment negotiations); *Weisman*, 312 Md. at 448,
> 540 A.2d at 792–93 (stating as settled precedent that "there may be
> the requisite special relationship or intimate nexus in an arm's length
> commercial transaction involving only pecuniary loss"); *Giant
> Food, Inc. v. Ice King, Inc.*, 74 Md. App. 183, 189, 536 A.2d 1182,
> 1185 (1988) (finding special relationship between buyer and seller
> and stating "the duty to furnish correct information arises when the
> relationship is of the nature that one party has the right to rely upon
> the other for information").
>
> In considering the existence of a duty to give correct information,
> courts have recognized that "[a]n inquiry made of a stranger is one
> thing; of a person with whom the inquirer has entered, or is about to
> enter, into a contract concerning the goods which are, or are to be,
> its subject, is another." *Griesi*, 360 Md. at 14, 756 A.2d at 554 (citing
> *Weisman*, 312 Md. at 447, 540 A.2d at 792). This analysis should
> also focus on whether there was "knowledge, or its equivalent, that
> the information is desired for a serious purpose; that he to whom it
> is given intends to rely and act upon it; that, if false or erroneous, he
> will because of it be injured in person or property." *Id.* at 13–14, 756
> A.2d at 554 (citing *Weisman*, 312 Md. at 447, 540 A.2d at 792).

850 F. Supp. 2d 557, 571-572 (D. Md. 2012); *see Bailey v. Deutsche Bank Trust Co.*, No. DKC

13-0144, 2013 WL 2903498, at *7 (D. Md. June 12, 2013) (dismissing negligent misrepresentation

claim because, unlike *Dwoskin*, plaintiff failed to allege facts that "an application for a loan

modification was ever presented or that any representation was made by [the defendants] with respect to such an application").

The court finds additional guidance in *Donnelly v. Branch Banking and Trust Company*. The *Donnelly* plaintiffs alleged a long-term contractual relationship with the defendant bank, such that the bank "had a duty to provide accurate representations to Plaintiffs during refinancing negotiations," the bank failed to make accurate representations, the plaintiffs relied on the misrepresentations, and ultimately were harmed because of their reliance on such misrepresentations. *Donnelly v. Branch Banking and Trust Co.*, 971 F. Supp. 2d 495, 505 (D. Md. 2013). The defendant argued that the plaintiffs' negligence claims should be dismissed because the defendant did not owe the plaintiffs a duty of care. *Id.* at 506.

The *Donnelly* court disagreed and explained:

> Following a careful review of the record and relevant caselaw, the Court concludes that Plaintiffs' Complaint contains sufficient allegations and inferences to survive BB & T's Motion with respect to Counts I and II . . . . Although Plaintiffs may not be able to rely on the original, Solomons Two loan agreement as imposing a duty upon BB & T in subsequent refinancing negotiations, it is conceivable that the transaction involving Plaintiffs' 10% interest in the Property could have imposed a duty of care on BB & T in subsequent negotiations with Plaintiffs. Indeed, one of the deciding factors in *Jacques* was that the bank had received consideration and a business advantage in exchange for a promise connected to a loan application. The transaction involving Plaintiffs' 10% interest could also be relevant to Plaintiffs' vulnerability or other circumstances that would warrant imposition of a duty of care on BB & T. Defendant has not presented any evidence outside the pleadings that affect this analysis.
>
> The Court is rightfully reluctant to transform the lender-borrower relationship in this case into a fiduciary relationship or to otherwise impose duties on BB & T beyond those found in the parties' loan agreements. However, based on the inferences and allegations outlined above and the undeveloped factual record, it would be premature for the Court to conclude that BB & T did not owe Plaintiffs a duty of care. Accordingly, BB & T's Motion will be

17

> denied as to Plaintiffs' negligence and negligent misrepresentation claims.

971 F. Supp. 2d at 507-508 (internal citations omitted).

At this stage, the court is satisfied that the duty of care applicable to Plaintiff's negligence and negligent misrepresentation claims arises, in part, from their existing contractual relationship arising from the original mortgage. *See Donnelly*, 971 F. Supp. 2d at 507-508 (denying motion to dismiss negligence and negligent misrepresentation claims where, although it is unclear whether plaintiffs could rely on the underlying loan agreement to create duty, other circumstances and undeveloped factual record rendered it premature to dismiss on grounds of duty); *Hebbeler v. First Mariner Bank*, No. ELH-17-3641, 2018 WL 3818855, at *11 (D. Md. Aug. 10, 2018) (denying motion to dismiss negligence claim because the "plaintiffs have alleged that [the defendant] was negligent with respect to that existing contract"); *Neal*, 2013 WL 428675, at *5 (noting that "the duty of care applicable to the [p]laintiffs' negligent misrepresentation arises from their existing contractual relationship with RCS based upon their original mortgage").

Additionally, construed in the light most favorable to Plaintiff, the Amended Complaint alleges additional circumstances that "could be relevant to [Plaintiff's] vulnerability or other circumstances that would warrant imposition of a duty of care on [Defendants]." *See Donnelly and Parker*, *supra*. Specifically, Plaintiff alleges that he communicated with Defendants on multiple occasions about his application for mortgage assistance, and Defendants gave him materially false assurances and information, or made material omissions, which directly resulted in damage to his credit and additional mortgage related expenses. (ECF No. 31 ¶¶ 15, 19, 21-24, 30-31, 33-34, 36.) *See Parker*, *supra*. Further, Defendants' alleged advertisements and solicitations directed to Plaintiff for the mortgage assistance program, Plaintiff's application to the mortgage assistance program, and Defendants' alleged material misrepresentations and/or

18

omissions over a period of five months regarding Plaintiff's eligibility are relevant as to whether the required intimate nexus exists.  *See Dwoskin*, *supra.*

Like *Donnelly*, the court is reluctant to allow Plaintiff to rely on the parties' original loan agreement alone to impose a tort duty upon Defendants in connection with the mortgage modification/assistance application.  In contrast to cases relied upon by Defendants, however, Plaintiff's negligence and negligent misrepresentation claims do not arise solely from Defendants' handling of the mortgage modification application.  While Plaintiff alleges, in part, that Defendants were negligent in the processing and handling of the mortgage modification application, Plaintiff further alleges that Defendants negligence pre-exists his application because they solicited him for the program with knowledge of his ineligibility.  Therefore, under the circumstances of the instant case, Defendants "can fairly be said to have a duty to give correct information, as it had knowledge the information was desired for a serious purpose, the potential borrowers would rely on it, and if the information was false these borrowers would be injured."  *Dwoskin*, 850 F. Supp. 2d at 572.

Accordingly, at this stage, the court declines to dismiss Plaintiff's negligence and negligent misrepresentation claims on the basis that Defendants did not owe a tort duty to Plaintiff as a matter of law.  The court will address the remaining elements for Plaintiff's negligence claims separately.

### 2.    *Professional Negligence*

"The elements required to establish a cause of action for professional negligence are equivalent to the elements required in a standard negligence action; the professional, however, is held to the standard of care that prevails in his or her profession."  *Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 226 Md. App. 420, 438 (Md. Ct. Spec. App. 2016), *aff'd*, 451 Md. 600 (2017).  "[O]ne who undertakes to render services in the practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that

profession or trade in good standing in similar communities." *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 299A (1965)).  Under Maryland law, the elements of negligence are: a duty, a breach of that duty, harm, and causation.  *Spaulding*, 714 F.3d at 778 (citing *Jacques*, 307 Md. at 53).

Defendants argue that even if they owed Plaintiff a duty, Defendants did not breach it because they offered him a loan modification.  (ECF No. 32-1 at 8.)  Plaintiff alleges:

> Defendants failed to exercise the degree of care which a reasonably prudent person or entity would have exercised by, among other things:
>
> > • Misrepresenting to Plaintiff that his payment obligation under the Mortgage was suspending while his modification application was pending;
> > • Failing to properly and timely process Plaintiff's application for mortgage assistance;
> > • Repeatedly informing Plaintiff that his application was incomplete due to missing documents that Plaintiff had provided to Defendants on numerous occasion
> > • Denying Plaintiff from the mortgage assistance program without a legitimate basis;
> > • Soliciting and allowing Plaintiff's application for the mortgage assistance program when the Mortgage was purportedly a "will not modify mortgage";
> > • Misrepresenting the nature of the Mortgage as non-modifiable when Defendants ultimately offered Plaintiff mortgage assistance; and
> > • Inducing and/or permitting Plaintiff to suspend mortgage payments while his assistance program application was pending before Defendants.
>
> As a direct and proximate result of Defendants' actions, Plaintiff has suffered, and continues to suffer, negative credit reporting which has drastically reduced his credit rating.
>
> Defendants' actions in damaging Plaintiff's credit rating have caused Plaintiff damages in an amount exceeding Seventy-Five Thousand Dollars ($75,000)

(ECF No. 31 ¶¶ 52-54.)

Taking the allegations in the light most favorable to Plaintiff, the Amended Complaint states a negligence claim.  The Motion will be denied as to Count I.

### 3.    *Negligent Misrepresentation*

Under Maryland law, to maintain a claim for negligent misrepresentation a plaintiff must allege:

> (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement;
> (2) the defendant intends that his statement will be acted upon by the plaintiff;
> (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury;
> (4) the plaintiff, justifiably, takes action in reliance on the statement; and
> (5) the plaintiff suffers damage proximately caused by the defendant's negligence.

*Martens Chevrolet, Inc. v. Seney*, 292 Md. 328, 337 (1982).

Plaintiff alleges:

> In the course of its regular and ordinary course of business, Defendants misrepresented to Plaintiff that his payment obligation under the Mortgage would be suspended while his mortgage assistance application was pending.
>
> Defendants further misrepresented that Plaintiff's Mortgage was eligible for a mortgage modification under SPS's mortgage assistance plan.
>
> Defendants knew, or should have known, that Plaintiff's request for a mortgage modification would not be successful, prior to inviting, encouraging, and facilitating an application under the mortgage assistance program.
>
> Defendants made their misrepresentation in the context of guiding Plaintiff into making a business and/or financial decision with respect to whether or not to apply for a mortgage modification.
>
> Defendants further knew that their representations would be relied upon by Plaintiff in making his decisions.

> Plaintiff justifiably relied upon the representations made by SPS, as an agent of and behalf of Onslow Bay, as he believed, as any debtor would, that his mortgage holder and its selected loan servicing company would be aware of their own policies and procedures for modifying a particular mortgage and would share with the debtor accurate information regarding the eligibility of a mortgage for modification.
>
> As a direct result of Defendants' misrepresentations and Plaintiff's reliance upon those representations, Plaintiff has been damaged in an amount exceeding Seventy-Five Thousand Dollars ($75,000), including, among other things, a substantial reduction in his credit rating.

(ECF No. 31 ¶¶ 56-62.)

Taking the factual allegations as true and construing them in the light most favorable to Plaintiff, the Amended Complaint states a negligent misrepresentation claim.  The Motion will be denied as to Count II.

### B.    <u>Fraud Claims – Counts III and IV</u>

Defendants argue that Plaintiff fails to allege the elements for fraud under Maryland law and that he fails to satisfy the Rule 9(b) pleading standard.  (ECF No. 32-1 at 9-10.)

#### *1.    Rule 9(b)*

"Under Maryland law, '[f]raud encompasses, among other things, theories of fraudulent misrepresentation, fraudulent concealment, and fraudulent inducement.'"  *Topline Solutions, Inc. v. Sandler Sys, Inc.*, No. ELH-09-3102, 2017 WL 1862445, at *32 (D. Md. May 8, 2017) (quoting *Sass v. Andrew*, 152 Md. App. 406, 432 (2003)).  In accordance with Rule 9(b), a plaintiff "must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Bourgeois v. Live Nation Entertainment Inc.*, 3 F. Supp. 3d 423, 435 (D. Md. 2014) (quoting *U.S. ex rel. Owens v. First Kuwaiti Gen'l Trading & Contracting Co.*, 612 F.3d 724, 731 (4th Cir. 2010)).  "Rule 9(b)

is 'less strictly applied with respect to claims of fraud by concealment' or omission of material facts, as opposed to affirmative misrepresentations, because 'an omission cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation.'" *Hebbeler v. First Mariner Bank*, No. ELH-17-3641, 2018 WL 3818855, at *6 (D. Md. Aug. 10, 2018) (quoting *Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. 539, 552 (D. Md. 1997)).

Plaintiff alleges that on August 30 and 31, 2019, Plaintiff was informed by written letter and telephone call with an SPS supervisor that (1) "SPS was unable to offer a 'Trial Modification' of the mortgage payment amounts because Onslow Bay's investors had not given SPS the contractual authority to modify the Mortgage in the first place;" and (2) "despite the repeated correspondence regarding missing documentation to support the mortgage assistance application, as well as the initial invitation to apply for mortgage assistance, Plaintiff was never eligible for a modification at all because Onslow Bay purchased the Mortgage as a 'will not modify mortgage.'" (EF No. 31 ¶¶ 30-31.)  The Amended Complaint further alleges that on March 5, 2019, April 18, 2019, May 16, 2019, and June 24, 2019, Defendants communicated with Plaintiff regarding his loan modification application and omitted material information (*i.e.*, he was not eligible for modification assistance).  (ECF No. 31 ¶¶ 19, 22-24.)  Plaintiff's fraud allegations are sufficient to withstand Rule 9(b).

### 2.    *Fraudulent Misrepresentation and Fraudulent Inducement*

Defendants argue that even if Plaintiff's fraud claims satisfy Rule 9(b) demand for particularity, Plaintiff does not allege the necessary elements of fraud.  (ECF No. 32-1 at 9-11.)  A fraudulent misrepresentation claim requires a plaintiff to allege:

> (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the

23

representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Nails v. S & R, Inc.*, 334 Md. 398, 415 (1994).

Plaintiff alleges:

Defendants made a false representation to Plaintiff that the Mortgage qualified for a modification.

Defendants knew that Plaintiff's request for a mortgage modification would not be successful, prior to inviting, encouraging, and facilitating an application under the mortgage assistance program.

Defendants misrepresented Plaintiff's eligibility for mortgage assistance for the purposes of defrauding Plaintiff by, among other things, inducing him to cease making monthly payments in order to put the Mortgage into default.

Plaintiff reasonably and justifiably relied on Defendants' misrepresentations, as he had no reason to question that his noteholder and its selected loan servicing company had conducted the necessary review of its own paperwork to determine whether mortgage modification was or was not permitted. For reasons still not explained, Defendants initially stated that the Plaintiff was eligible, then stated he was not, and flipped that position for a third time when it approved the Plaintiff's mortgage modification.

As a direct result of Defendants' misrepresentations and Plaintiff's detrimental reliance upon those representations, Plaintiff has been damaged in an amount exceeding Seventy-Five Thousand Dollars ($75,000), including, among other things, a substantial reduction in his credit rating.

(ECF No. 31 ¶¶ 65-69.)

Similarly, a claim for fraudulent inducement requires:

. . . (1) that the representation made is false; (2) that its falsity was either known to the [defendant], or the misrepresentation was made with such a reckless indifference to truth as to be equivalent to actual

24

knowledge; (3) that it was made for the purpose of defrauding the [plaintiff]; (4) that [the plaintiff] not only relied upon the misrepresentation, but had a right to rely upon it in the full belief of its truth, and that [the plaintiff] would not have done the thing from which the injury resulted had not such misrepresentation been made; and (5) that [the plaintiff] actually suffered damage directly resulting from such fraudulent misrepresentation.

*First Union Nat'l Bank v. Steele Software Sys. Corp.*, 154 Md. App. 97, 134 (2003).

Plaintiff alleges:

> Defendants made a false representation to Plaintiff that the Mortgage qualified for a modification.
>
> Defendants knew that Plaintiff's request for a mortgage modification would not be successful, prior to inviting, encouraging, and facilitating an application under the mortgage assistance program.
>
> Defendants misrepresented Plaintiff's eligibility for mortgage assistance for the purposes of defrauding Plaintiff by, among other things, inducing him to cease making monthly payments in order to put the Mortgage into default.
>
> Plaintiff reasonable and justifiably relied on Defendants' misrepresentations, as he had no reason to doubt that his noteholder and loan servicing company possessed the requisite knowledge and awareness of Plaintiff's eligibility for mortgage assistance.
>
> Defendants intended to deceive Plaintiff, held themselves out as a reputable creditor and loan servicing company, all the while, using deception and deceit in its commercial dealings with the Plaintiff. At no time have the Defendants ever explained why an alleged non-modifiable mortgage was initially offered for modification, subsequently denied, and ultimately approved.

(ECF No. 31 ¶¶ 72-76.)

Taken in the light most favorable to Plaintiff, the Amended Complaint alleges that Defendants knew Plaintiff's mortgage was not modifiable; actively solicited and advertised a program to him that he was not eligible for; Plaintiff applied and stopped making mortgage payments in accordance with Defendants' representations; he thereby defaulted on the loan; and,

25

as a result, Defendants "obtain[ed] additional fees and penalties."  (ECF No. 31 ¶ 42.)  Plaintiff adequately alleges fraud.  Further, Defendants' arguments largely go to the merits of Plaintiff's claims.  These arguments are better resolved on a Rule 56 motion following a more fulsome record developed through discovery.  The Motion will be denied as to Counts III and IV.

### C.      <u>Detrimental Reliance / Promissory Estoppel – Count V</u>

Defendants argue that Plaintiff's detrimental reliance claim fails because "Plaintiff fails to allege that Defendants made any clear and definite promises that they did not live up to."  (ECF No. 32-1 at 13.)

Detrimental reliance, also known as "promissory estoppel is a quasi-contractual claim, meaning 'it is an equitable remedy that permits recovery where, in fact, there is no contract, but where circumstances are such that justice warrants a recovery as though there had been a promise.'"  *Ezzat v. UGI/Amerigas Corp.*, No. RDB-22-02918, 2023 WL 2864931, at *5 (D. Md. Apr. 10, 2023) (quoting *Odyssey Travel Ctr., Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 626 (D. Md. 2003).  Promissory estoppel requires four elements: "(1) a clear and definite promise; (2) where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee; (3) which does induce actual and reasonable action or forbearance by the promisee; and (4) causes a detriment which can only be avoided by the enforcement of the promise."  *St Michaels Media, Inc. v. Mayor and City Council of Baltimore*, No. ELH-21-2337, 2023 WL 2743361, at *40 (D. Md. Mar. 31, 2023).

In his Opposition, Plaintiff directs the court's attention to *Currie v. Wells Fargo Bank N.A.* In *Currie*, the plaintiffs asked for a loan modification and were advised by the defendant bank that they had to be in default for ninety days to be considered for the loan modification.  950 F. Supp. 2d 788, 792 (D. Md. 2013).  Subsequently, the plaintiffs defaulted on their home loan.  *Id.* at 793.

Thereafter, on various occasions, the plaintiffs requested a loan modification, but were either offered a different agreement or denied because they did not submit the required information. *Id.* at 793-95. The plaintiffs' complaint contained eight counts, including a promissory estoppel claim. *Id.* at 795.

The *Currie* court found that the plaintiff stated a claim for promissory estoppel on the basis that the plaintiffs alleged that the defendant "repeatedly promised to evaluate them for a loan modification, that these promises induced them to submit paperwork, and that Wells Fargo's continual failure to evaluate their requests resulted in the misallocation of mortgage payments and/or the accrual of penalties." *Id.* at 806.

In the instant case, Plaintiff alleges:

> By soliciting, facilitating, and ultimately accepting Plaintiff's application for a mortgage modification, Defendants promised that Plaintiff would be eligible for the mortgage assistance program.
>
> Defendants knew that their promises and representations would induce Plaintiff into applying for the mortgage assistance program and accordingly suspend his mortgage payments, as permitted, while the request was considered.
>
> Plaintiff did rely upon Defendants' promises and representations when he applied for mortgage assistance and ceased making monthly mortgage payments, as provided for by Defendants' policies and procedures for the mortgage assistance program.
>
> Plaintiff suffered a detriment as a direct result of Defendants' actions in misleading him to apply for mortgage assistance, cease making mortgage payments during the application process, and repeatedly negatively reporting him to credit reporting agencies.
>
> Plaintiff's detriment can only be avoided by enforcing Defendants' promises that Plaintiff's Mortgage is eligible for a mortgage modification, thus removing any default and associated negative credit reports from Plaintiff's account.

(ECF No. 31 ¶¶ 80-84.)

Construed in the light most favorable to Plaintiff, the Amended Complaint alleges that Defendants' advertisements and solicitations were assurance that Plaintiff would be eligible for the program – or, at the very least, that he was eligible for consideration, which, it turns out he was not due to the nature of his mortgage loan as a "no-modification" loan. Plaintiff alleges that the promise and assurance of Defendants induced him to apply for the assistance and suspend payments in accordance with Defendants' policies. Additionally, Plaintiff alleges that Defendants' promise that he would be eligible resulted in missed payments and eventually negative credit reporting. As stated above, Defendants' arguments largely go to the merits of Plaintiff's claim and are better resolved on a Rule 56 motion following a more fulsome record developed through discovery. The Motion will be denied as to Count V.

### D.  **FCRA – Counts V and VI**

Defendants argue that Plaintiff's FCRA claims fail because "Plaintiff's allegations show only accurate reporting by Defendants—not any negligent or willful violations." (ECF No. 32-1 at 14.) Further, Defendants maintain that there is no disputed or inaccurate information. *Id.* at 15.

The FRCA was enacted "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information . . . ." 15 U.S.C. § 1681(b). In *Saunders v. Branch Banking And Trust Co. of Va.*, the Fourth Circuit succinctly explained:

> If a consumer notifies a [Credit Reporting Agency ("CRA")] that he disputes the accuracy of an item in his file, FCRA requires the CRA to notify the furnisher of the dispute. § 1681i(a)(2). Upon receipt of this notice, a furnisher must:

> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
> (C) report the results of the investigation to the consumer reporting agency; [and]
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis . . . .
>
> § 1681s–2(b)(1).
>
> Thus, FCRA requires furnishers to determine whether the information that they previously reported to a CRA is "incomplete or inaccurate." § 1681s–2(b)(1)(D) (emphasis added). In so mandating, Congress clearly intended furnishers to review reports not only for inaccuracies in the information reported but also for omissions that render the reported information misleading. Courts have held that a credit report is not accurate under FCRA if it provides information in such a manner as to create a materially misleading impression.

526 F.3d 142, 148 (4th Cir. 2008) (internal citations omitted).

"A consumer who disputes the accuracy of information in a credit report 'may have a private right of action against the furnisher of the inaccurate information if the furnisher fails to properly investigate a dispute.'" *Tisdale v. CASA Partner V.L.P. The Park at Winterset*, 2019 WL 13250978, at *2 (D. Md. Sept. 6, 2019) (quoting *Jackson v. Convergent Outsourcing, Inc.*, No. RDB-13-1755, 2014 WL 722116, at *2 (D. Md. Feb. 25, 2014)). "To state a claim under that section of the FCRA, the plaintiff must plead that: (1) the plaintiff 'notified the consumer reporting agency of the disputed information'; (2) 'the consumer reporting agency notified the defendant furnisher of the dispute'; and (3) 'the furnisher then failed to [reasonably] investigate and modify the inaccurate information.'" *Id.* (quoting *Alston v. Wells Fargo Bank, N.A.*, No. 8:12-CV-03671-AW, 2013 WL 990416, at *4 (D. Md. 2013)).

As an initial matter, Plaintiff cites to 15 U.S.C. § 1681s-2(a) as the basis for his FCRA claim. (ECF No. 31 ¶¶ 87-88.) "FCRA explicitly bars private suits for violations of § 1681s–2(a), but consumers can still bring private suits for violations of § 1681s–2(b)." *Saunders*, 526 F.3d at 149. To the extent Plaintiff intends to bring a FCRA claim pursuant to § 1681s–2(b), Plaintiff fails to allege that a credit reporting agency notified Defendants of the dispute. *See Allen v. CitiMortgage, Inc.*, No. CCB-10-2740, 2011 WL 3425665, at *10 (D. Md. Aug. 4, 2011) (finding that the plaintiffs failed to state a claim under the FCRA because, while they alleged they contacted credit reporting agencies and the defendant about the inaccuracy, and that both refused to alter the credit score after the inaccuracy, the plaintiffs failed to allege that the credit reporting agency notified the defendant about the disputed information). The Motion will be granted as to Counts VI and VII.

### E.   MCPA – Count VIII

"To state a claim under the MCPA, a plaintiff must adequately plead that (1) the defendant engaged in an unfair or deceptive practice or misrepresentation, (2) the plaintiff relied upon the representation, and (3) doing so caused the plaintiff actual injury." *Turner v. JPMorgan Chase, N.A.*, No. TDC-14-0576, 2015 WL 5021390, at *4 (D. Md. Aug. 21, 2015) (citing *Currie v. Wells Fargo Bank*, 950 F. Supp. 2d 788, 796 (D. Md. 2013)). "Because the MCPA claim sounds in fraud, it is also subject to the heightened pleading requirement of FRCP 9(b)."[7] *Dwoskin v. Bank of America, N.A.*, 850 F. Supp. 2d 557, 569 (D. Md. 2012).

"Among other things, it is unlawful under the MCPA for a person to use unfair or deceptive trade practices related to the extension of consumer credit or the collection of consumer debts." *Hebbeler v. First Mariner Bank*, No. ELH-17-3641, 2018 WL 3818855, at *6 (D. Md. Aug. 10,

---

[7] Plaintiff relies on the same misrepresentations and material omissions for his fraud and MCPA claims. As discussed in Section IV.B.1, *supra*, Plaintiff has satisfied Rule 9(b).

2018) (citing MD. CODE ANN. COM. LAW § 13-301 (2023)).  MD. CODE ANN. COM. LAW § 13-301(1) "defines unfair or deceptive trade practices as, *inter alia*: (1) 'False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;' and (2) 'Failure to state a material fact if the failure deceives or tends to deceive.'"  *Id.* (quoting MD. CODE ANN. COM. LAW § 13-301(1)); *see Bank of America, N.A. v. Jill P. Mitchell Living Trust*, 822 F. Supp. 2d 505, 535 (D. Md. 2011) (noting that "both misrepresentation and omission claims are 'unfair or deceptive' trade practices under the MCPA").

Taken in the light most favorable to Plaintiff, the Amended Complaint alleges unfair trade practices prior to, and during, the mortgage modification application process.  Plaintiff alleges that Defendants solicited Plaintiff for the mortgage assistance program, omitted the material information regarding his mortgage modification status, and encouraged and allowed Plaintiff to apply for such assistance – and continued the process over the course of months with knowledge that Plaintiff was ineligible for assistance the whole time.  *See Palermino v. Ocwen Loan Servicing, LLC*, No. TDC-14-0522, 2015 WL 6531003, at *3 (D. Md. Oct. 26, 2015) (finding that plaintiff alleged an MCPA claim when she alleged that defendant "encouraged her to submit loan modification applications with the intent of denying at least some of them" and, even though one of them was eventually granted, "she had invested time and resources in previous applications, forgoing other options and accruing charges in the process"); *Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 797-98 (D. Md. 2014) (finding that plaintiffs stated a MCPA claim where they alleged defendant falsely stated they would consider plaintiffs for a loan and defendant "managed to run up late fees and other default related charges and strip cash from [p]laintiffs prior to foreclosure").

With regard to the second element, "a consumer relies on a material omission under the MCPA where it is substantially likely that the consumer would not have made the choice in question had the commercial entity disclosed the omitted information." *Bank of America, N.A. v. Jill P. Mitchell Living Trust*, 822 F. Supp. 2d 505, 535 (D. Md. 2011). Plaintiff alleges that he relied on Defendants' misrepresentation and, "[h]ad Defendants not misled [him] into believing he qualified for mortgage modification, Plaintiff would have made each months' Mortgage payment timely and in full, and would not have accrued an arrearage, which (as set forth below) resulted in a substantial decrease in his credit rating directly caused by SPS's delinquency reporting." (ECF No. 31 ¶ 32.)

With regard to the injury element, "[a]n individual bringing a private cause of action pursuant to the MCPA must establish an actual injury or loss sustained as a result of a prohibited practice." *Hebbeler*, 2018 WL 3818855, at *7. Plaintiff alleges that Defendants' misrepresentations caused damage to his credit and other non-specified "actual damages." *See Allen v. CitiMortgage, Inc.*, No. CCB-10-2740, 2011 WL 3425665, at *10 (D. Md. Aug. 4, 2011) (concluding that plaintiff alleged an actual injury or loss under the MCPA by alleging damage to his credit score, "emotional damages, and forgone alternative legal remedies to save their home"). At this stage, Plaintiff's MCPA claim withstands a Rule 12(b)(6) challenge.

**CONCLUSION**

For the reasons set forth herein Defendants' Motion to Dismiss (ECF No. 32) is GRANTED IN PART and DENIED IN PART: granted as to Counts VI and VII; and denied as to Counts I, II, III, IV, V, and VIII.

A separate order follows.

_____/s/_____
Julie R. Rubin
United States District Judge

August 29, 2023