## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **MARK A. WESKER,** | |
| *Plaintiff,* | |
| **v.** | |
| **SELECT PORTFOLIO SERVICING, INC.,** *et al.*, | **Civil No. 1:21-cv-03012-JRR** |
| *Defendants.* | |

## MEMORANDUM OPINION

This matter comes before the court on Defendants Select Portfolio Servicing Inc. ("SPS"), and Onslow Bay Financial LLC's Motion for Summary Judgment. (ECF No. 61; the "Motion.") The court has reviewed all papers. No hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons that follow, by accompanying order, the Motion will be granted.

## I.  BACKGROUND

### A.  Undisputed Material Facts

On or about August 1, 2005, Plaintiff Mark Wesker executed a Fixed/Adjustable Rate Note in the amount of $1,000,000 (the "Note"), payable to Merrill Lynch Credit Corporation, as the lender. (Defs.' Mot., Anthony Bui Decl., Exhibit 1, ECF No. 61-2 ¶ 3.) The Note is secured by a Deed of Trust, which was executed on the same date (collectively "the Mortgage.") (Defs.' Mot., Michelle Simon Decl., Exhibit 2, ECF No. 61-3 ¶ 3.) Since January 2019, Onslow Bay has been the owner of the Mortgage and SPS has acted as Onslow Bay's loan servicer with regard to the Mortgage. (Bui Decl. ¶¶ 4–5, 9.) The Mortgage "is not held in a securitized trust or any other

commercial vehicle capable of placing contractual restrictions on Onslow Bay's decision-making process with regard to servicing the Mortgage."  (Bui Decl. ¶ 4; Simon Decl. ¶ 18.)

In February 2019, Plaintiff experienced a disruption of income and depletion of savings. (Defs.' Mot., Mark Wesker Dep., Exhibit 3, ECF No. 61-4 at 27:21–28:1.)  On February 22, 2019, Plaintiff called SPS customer service inquiring about the availability of a mortgage modification and requested that SPS open a Request for Mortgage Assistance ("RMA") application.  (Defs.' Mot., Transcript of Phone Call from Mark Wesker to Tamesha Hamilton, Exhibit 2-C, ECF No. 61-3 at 4:1–7; Wesker Dep. 23:21–24:1; Simons Decl. ¶ 6.)  During the phone call, Plaintiff was advised that, once SPS received all the required information, it would review and evaluate the RMA application, and that the turnaround time was approximately 30 days.  (Phone Call from Wesker to Hamilton 9:3–22; Wesker Dep. 32:4–6.)

That same day, February 22, 2019, Plaintiff submitted an RMA application.  (Defs.' Mot., February 2019 RMA, Exhibit 2-D, ECF No. 61-3 at 44–48.)  On March 1, 2019, Plaintiff updated his RMA application.  (Defs.' Mot., March 2019 RMA, Exhibit 2-E, ECF No. 61-3 at 50–54.)  SPS followed up with Plaintiff on various occasions to clarify inconsistences contained in the RMA application.  (Simons Decl. ¶¶ 10–11, 13.)  Although Plaintiff disagreed that there were inconsistencies in his RMA application materials, he provided the requested clarification to SPS. (Pl.'s Resp., Letters to SPS, Exhibit 4, ECF No. 63-4; Defs.' Mot., Transcript of Phone Call from Mark Wesker to Edward Sayers, Exhibit 2-F, ECF No. 61-3 at 5:6–10:22; Defs.' Mot., Transcript of Phone Call from Mark Wesker to Marlin Ramirez, Exhibit 2-G, ECF No. 61-3 at 3:10–6:20.)

Although SPS representatives reminded Plaintiff to continue to make his monthly Mortgage payments while the RMA application was pending (Phone Call from Wesker to Hamilton 12:8–14; Phone Call from Wesker to Sayers 11:1–11; Phone Call from Wesker to

Ramirez 4:18–21; Simon Decl. ¶ 8), Plaintiff failed to make the requisite monthly Mortgage payments for the four-year period from March 1, 2019, to February 23, 2023.  (Simon Decl. ¶ 9.)

On July 30, 2019, after a review of Plaintiff's circumstances, "Onslow Bay did not authorize SPS to offer Plaintiff a loan modification because he did not meet the qualification criteria." (Bui Decl. ¶ 7; Pl.'s Resp., July 30, 2019, Letter, Exhibit 2, ECF No. 63-2.)  Specifically, SPS notified Plaintiff by letter in part: "We service your mortgage on behalf of an investor or group of investors that has not given us the contractual authority to modify your mortgage."  (July 30, 2019, Letter, ECF No. 63-2.)

On December 29, 2019, SPS contacted Plaintiff to inquire if Plaintiff wanted to renew his request for mortgage assistance.  (Pl.'s Resp., January 13, 2020, Letter, Exhibit 6, ECF No. 63-6 at 1; Wesker Dep. 64:10–19.)   On January 31, 2020, "Onslow Bay offered Plaintiff a loan modification to get him back on a repayment plan." (Bui Decl. ¶ 9; Defs.' Mot., January 30, 2020, Letter, Exhibit 2-I, ECF No. 61-3 at 71.)   Specifically, Plaintiff received an offer for a trial modification, which would become permanent if he complied with certain terms and conditions. (January 30, 2020, Letter, ECF No. 61-3 at 71; Simon Decl. ¶ 18.)  The offer for trial modification (referred to as the "Plan") provided in part:

> Your Plan payments will take the place of your normal monthly mortgage payments during the term of the Plan.  **You must make each of the below-listed payments by or before the listed due dates, or the Plan will be cancelled.**  Your monthly Plan payments and due dates are as follows:

| Payment | Due Date | Amount |
|---|---|---|
| Payment 1 | 03/01/2020 | $3,917.73 |
| Payment 2 | 04/01/2020 | $3,917.73 |
| Payment 3 | 05/01/2020 | $3,917.73 |

(January 30, 2020, Letter, ECF No. 61-3 at 71.)  Although Plaintiff declined the offer (Simon Decl. ¶ 18), beginning on March 1, 2020, through at least June 2, 2021, Plaintiff deposited $3,917.73 in

escrow on a monthly basis.  (Pl.'s Resp., Escrow Account Deposits, Exhibit 3, ECF No. 63-3 at 1–40.)

### B.   <u>Procedural History</u>

On November 23, 2021, Plaintiff filed the instant action.  (ECF No. 1.)  On December 21, 2022, Plaintiff filed an Amended Complaint, which sets forth eight counts: Professional Negligence (Count I); Negligent Misrepresentation (Count II); Fraudulent Misrepresentation (Count III); Fraudulent Inducement (Count IV); Detrimental Reliance (Count V); Negligent Violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.* (Count VI); Willful Violation of the FCRA, 15 U.S.C. §§ 1681, *et seq.* (Count VII); and Violation of Maryland's Consumer Protection Act ("MCPA"), MD. CODE ANN., COM. LAW §§ 13-301, *et seq.* (Count VIII).  (ECF No. 31 at 12–21.)  (ECF No. 31.)  On January 20, 2023, Defendants moved to dismiss the Amended Complaint, which motion was granted in part and denied in part.  (ECF Nos. 32 and 40.)  The motion was granted as to Plaintiff's FCRA claims (Counts VI and VII) and denied as to the remaining claims (Counts I, II, III, IV, V, and VIII).

On September 12, 2023, Defendants filed an Answer.  (ECF No. 41.)  The parties have since engaged in discovery.  Now that discovery has closed, Defendants move for summary judgment on the remaining claims on the following grounds: (1) Defendants did not owe Plaintiff a tort duty; (2) Defendants made no clear promise on which Plaintiff relied; (3) there is no admissible evidence that Defendant made misrepresentations or concealed material facts; and (4) even assuming Plaintiff presents a disputed fact as to liability on any claim, Plaintiff fails to present any admissible evidence of non-speculative damages.  (Defs.' Mot., ECF No. 61-1 at 1.)

## II.    LEGAL STANDARD

### Federal Rule of Civil Procedure 56

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial.  *Id*. at 249.  Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).  This court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

In undertaking this inquiry, the court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party.  *Libertarian Party of Va.*, 718 F.3d at 312; *Scott v. Harris*, 550 U.S. 372, 378 (2007).  The court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Adin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may

not make credibility determinations at the summary judgment stage).  Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility.  *Tolan v. Cotton*, 572 U.S. 650 (2014).

## III.   ANALYSIS[1]

### A.   Federal Rule of Civil Procedure 56

The court's analysis begins with the requirements of Federal Rule of Civil Procedure 56. Pursuant to Rule 56(c)(1), the party "asserting that a fact cannot be or is genuinely disputed must support this assertion."  FED. R. CIV. P. 56(c)(1).  (This makes senses inasmuch as the court may not engage in factfinding or evidence weighing on a Rule 56 motion.)  The rule prescribes two methods by which a party can satisfy its 56(c)(1) burden:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1)(A)-(B).

---

[1] Generally, "the [c]ourt applies [a] more liberal standard in reviewing a *pro se* response to a defendant's summary judgment motion."  *Bugoni v. Emp. Background Investigations, Inc.*, No. CV SAG-20-1133, 2022 WL 888434, at *2 (D. Md. Mar. 25, 2022), *aff'd*, No. 22-1548, 2023 WL 3721210 (4th Cir. May 30, 2023).  "Of course, the logic underpinning the liberal construction rule is that a typical *pro se* plaintiff does not have legal training and is unfamiliar with the legal system."  *Polidi v. Bannon*, 226 F. Supp. 3d 615, 616 n.1 (E.D. Va. 2016).  Here, however, *pro se* Plaintiff Mark Wesker is a licensed practicing attorney in Maryland.  Therefore, the court is not required to afford Plaintiff the liberal construction of his pleadings and papers reserved for non-attorney *pro se* litigants.  *See Polidi*, 226 F. Supp. 3d at 616 n.1 ("[A]lthough plaintiff's legal training has not been on display in his recent lawsuits, plaintiff is not entitled to the lenient standard afforded typical *pro se* litigants."); *Andrews v. Columbia Gas Transmission Corp.*, 544 F.3d 618, 633 (6th Cir. 2008) (concluding that it was not an abuse of discretion for the magistrate judge to deny the *pro se* plaintiffs special consideration because they are practicing attorneys); *Bertucci v. Brown*, 663 F. Supp. 447, 449 (E.D.N.Y. 1987) ("Although *pro se* complaints are held to less exacting standards than pleadings drafted by lawyers, plaintiff was a former attorney and is therefore not entitled to the considerations accorded a typical *pro se* plaintiff.") (citation omitted).  Therefore, the court will not give Plaintiff Wesker's pleadings and papers the liberal construction traditionally reserved for *pro se* litigants.

Critically, a party must present the materials it cites in "a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2). "Depositions and affidavits must be based on personal knowledge, and all documents and other physical evidence must be properly authenticated and either non-hearsay or within a recognized exception." *E.E.O.C. v. Denny's, Inc.*, Civ. No. WDQ-06-2527, 2010 WL 2817109, at *3 (D. Md. July 16, 2017). "For a court to accurately determine whether there is a factual dispute for a jury, the judge must be assured that the evidence [s]he examines at summary judgment is as authentic as that which the jury will consider." *Tillery v. Borden*, No. CIV.A. CBD-07-1092, 2010 WL 2132226, at *2 (D. Md. May 25, 2010).

Here, Plaintiff attaches nine exhibits and asserts various facts in his response to the Motion. Two days after he filed his response, Plaintiff filed a supplemental exhibit—his deposition testimony—which fails to authenticate a considerable number of exhibits on which he relies. (ECF No. 64.) The response is also materially deficient because Plaintiff fails to cite to particular parts of materials in the record. FED. R. CIV. P. 56(c)(1)(A) (requiring citation to "particular parts of materials"). By way of example, in Plaintiff's "Material Facts in Dispute" section, he states with no record citation, "[i]t is both alleged, included in the Plaintiff's discovery responses and depositions that he was told by SPS that he was not eligible to be considered for a potential loan modification, nor [sic] that Onslow Bay could have modified the mortgage." (Pl.'s Resp., ECF No. 63 at 3.) In nearly all instances, Plaintiff purports to refute Defendants' recitation of undisputed facts with oblique or generalized reference to the record absent citation to a particular part of the materials, and at times absent support of any sort. *Id.* at 3–8; *see* FED. R. CIV. P. 56(c)(1)(A). In addition to failing to comply with Rule 56(c)'s clear instruction, Plaintiff also refers to and appears to rely on, at least in part, allegations in the Amended Complaint to challenge the Motion. To be clear, because a pleading is not competent to oppose a Rule 56 motion, the

court will not consider Plaintiff's pleading allegations in determining whether a genuine dispute of material fact exists.[2]

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "A mere scintilla of evidence is not enough to create a fact issue; there must be evidence on which a jury might rely." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958–59 (4th Cir. 1984) (citation omitted). Indeed, "the nonmoving party cannot rest on its pleadings, but must point to specific evidence giving rise to a triable issue." *Supermarkets Gen. Corp. v.*

---

[2] Similarly, throughout Plaintiff's response he makes reference to the court's memorandum opinion at ECF No. 39 ruling on Defendants' Rule 12(b)(6) Motion to Dismiss (ECF No. 32); while it is not entirely clear, several of these references appear to ignore or misconstrue the applicable standard on a 12(b)(6) motion, which requires the court to accept as true well-pled facts and to draw reasonable inferences in favor of the non-movant. The court's evaluation of whether factual allegations in a pleading could, if true, support an asserted claim has no relevance on a Rule 56 motion. Therefore, for the sake of clarity, other than Plaintiff's occasional reference to the opinion at ECF No. 39 as a means to recite law applicable to an asserted claim (which, notably, are cases in which the rendering court was ruling on a Rule 12(b)(6) motion), the court disregards Plaintiff's apparent attempt (sometimes opaque due to the wording or syntax of Plaintiff's sentences) to convert the court's recitation and liberal view of "well-pled allegations" as Rule 56 undisputed facts or conclusions regarding Defendants' duties. *See, e.g.,* Plaintiff's opposition at ECF No. 63 at 17–18: "This Court further found that the allegations that multiple communications between Plaintiff and Defendants concerning the mortgage assistance application included materially false assurances and information, or made material omissions, which directly resulted in damage to his credit and additional mortgage related expenses. [ECF 39 at 18–19]." The court made no findings of fact in its opinion at ECF No. 39; and made no finding that any tort duty, were it to apply, had been violated. To wit, the portion of the opinion to which Plaintiff refers in the above-cited example reads in fact: "At this stage, the court is satisfied that the duty of care applicable to Plaintiff's negligence and negligent misrepresentation claims arises, in part, from their existing contractual relationship arising from the original mortgage. *See Donnelly*, 971 F. Supp. 2d at 507–508 (denying motion to dismiss negligence and negligent misrepresentation claims where, although it is unclear whether plaintiffs could rely on the underlying loan agreement to create duty, other circumstances and undeveloped factual record rendered it premature to dismiss on grounds of duty); *Hebbeler v. First Mariner Bank*, No. ELH-17-3641, 2018 WL 3818855, at *11 (D. Md. Aug. 10, 2018) (denying motion to dismiss negligence claim because the 'plaintiffs have alleged that [the defendant] was negligent with respect to that existing contract'); *Neal*, 2013 WL 428675, at *5 (noting that 'the duty of care applicable to the [p]laintiffs' negligent misrepresentation arises from their existing contractual relationship with RCS based upon their original mortgage'). Additionally, construed in the light most favorable to Plaintiff, the Amended Complaint alleges additional circumstances that 'could be relevant to [Plaintiff's] vulnerability or other circumstances that would warrant imposition of a duty of care on [Defendants].' *See Donnelly* and *Parker, supra.* Specifically, Plaintiff alleges that he communicated with Defendants on multiple occasions about his application for mortgage assistance, and Defendants gave him materially false assurances and information, or made material omissions, which directly resulted in damage to his credit and additional mortgage related expenses. (ECF No. 31 ¶¶ 15, 19, 21–24, 30–31, 33-34, 36.) *See Parker, supra.*"

*Pathmark Title Co.*, 686 F. Supp. 535, 536–37 (D. Md. 1987). In sum, "[i]t is not enough merely to claim that evidence is available. It must be produced. If no one took the deposition of a necessary and available witness, then the party relying on that potential testimony must produce an affidavit from that witness." *Nat'l Ass'n of State Aviation Offs. v. ACSYS, Inc.*, No. CIV.A. DKC2000-2236, 2001 WL 720637, at *2 (D. Md. June 25, 2001).

Considering all of Plaintiff's submissions, it is clear on the record before the court that Defendants are entitled to summary judgment as to all remaining claims, because there is no genuine dispute of material fact and the applicable law dictates that Defendants are entitled to judgment.

**B.**      **Negligence Claims – Counts I and II**

In Counts I and II Plaintiff asserts professional negligence and negligent misrepresentation claims. (Amended Complaint, ECF No. 31 at 12–15.) Defendants argue that they are entitled to judgment as a matter of law on Plaintiff's negligence claims because Defendants do not owe a tort duty to Plaintiff. (Defs.' Mot., ECF No. 61-1 at 9.)

"To establish a cause of action in negligence a plaintiff must prove the existence of four elements: a duty owed to him (or to a class of which he is a part), a breach of that duty, a legally cognizable causal relationship between the breach of duty and the harm suffered, and damages." *Jacques v. First Nat'l Bank of Maryland*, 307 Md. 527, 531 (1986) (citations omitted). "In a negligence claim against a provider of professional services, the professional is held to the standard of care of his or her profession." *Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 451 Md. 600, 610 (2017). "But without a duty of care, there is no liability in negligence." *Id.* at 611. Because Plaintiff's claims for professional negligence and negligent misrepresentation

involve the same alleged course of conduct by Defendants, the court will address the claims together as to the duty element.

"In Maryland, causes of action based on negligence or negligent misrepresentation require the plaintiff to prove a duty owed" by the defendant to the plaintiff. *Spaulding v. Wells Fargo Bank, N.A.*, 920 F. Supp. 2d 614, 620 (D. Md. 2012) (citing *Jacques,* 307 Md. at 531). "Maryland defines duty as an obligation to which the law will give effect and recognition to conform to a particular standard of conduct toward another." *Balfour*, 451 Md. at 611. "To determine whether a tort duty exists in a particular context, we examine: (1) 'the nature of the harm likely to result from a failure to exercise due care,' and (2) 'the relationship that exists between the parties.'" *100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co.*, 430 Md. 197, 213–14 (2013) (quoting *Jacques*, 307 Md. at 534).

It is "a longstanding principle of Maryland law that the relationship of a bank to its customer in a loan transaction is ordinarily a contractual relationship between a debtor and a creditor and is not fiduciary in nature." *Parker v. Columbia Bank*, 91 Md. App. 346, 368 (1992). "'The mere negligent breach of a contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort.'" *Jacques*, 307 Md. at 534 (quoting *Heckrotte v. Riddle*, 224 Md. 591, 595 (1961)). Where, as here, "the failure to exercise due care creates a risk of economic loss only, courts have generally required an intimate nexus between the parties as a condition to the imposition of tort liability. This intimate nexus is satisfied by contractual privity or its equivalent." *Id.* at 534–35. "In these cases, if an intimate nexus was established, a duty of care was owed, and the defendant could be held liable to the plaintiff for pecuniary losses." *Balfour*, 451 Md. at 615.

Here, Defendants argue that they are entitled to summary judgment on Plaintiff's negligence claims because Plaintiff fails to present any admissible evidence to support an intimate nexus or special relationship to create a tort duty. (Defs.' Mot., ECF No. 61-1 at 11–12.) In response, Plaintiff maintains that "the record compiled during discovery supports a reasonable inference that either privity exists, or the relationship between the parties is sufficiently close, or intimate." (Pl.'s Resp., ECF No. 63 at 13–19.)

In *Spaulding v. Wells Fargo Bank, N.A.*, the Fourth Circuit succinctly explained the relevant facts in *Jacques v. First Nat'l Bank of Maryland*[3] and the intimate nexus test:

> In *Jacques*, 515 A.2d at 756, plaintiffs executed a residential sales contract to purchase a home for $142,000. The contract required them to pay $30,000 in cash and secure the $112,000 balance through a conventional loan. The Jacques applied for a loan with First National Bank, submitting a copy of their contract with the application. They also sent a $144 processing fee. The bank acknowledged receiving the application and, in a letter, stated that it would hold a rate of 11–7/8% for 90 days. Three weeks later, the bank informed the Jacques they were approved for a loan of $74,000—less than what they needed under the contract. Some time after that, the bank told the Jacques it had miscalculated and they were in fact only approved for a loan of $41,400. The Jacques tried to get a $100,000 loan from another bank, but by then interest rates had gone up two points.
>
> The Jacques filed suit against First National Bank; a jury found for the Jacques on their negligence claim and awarded them $10,000. The Court of Appeals affirmed the judgment, holding that "under the particular facts of this case," the bank was properly charged with a duty of reasonable care in processing the Jacques' loan application. The court noted that the bank made at least two express promises to the Jacques—that it would process their loan application and that it would lock in the 11–7/8% interest rate for 90 days. The court held that the $144 processing fee was sufficient consideration for these promises. The court also noted the "rather extraordinary financing provisions contained in the real estate sales contract" and that the bank was "well aware" of the provisions. In these circumstances, the court found the bank had a duty to exercise

---

[3] 307 Md. 527, 528 (1986) (addressing "whether a bank that has agreed to process an application for a loan owes to its customer a duty of reasonable care in the processing and determination of that application").

reasonable care in processing the application. But the court added a caveat:

> The case before us is factually distinguishable from those in which a prospective customer simply submits an application for a loan, or for insurance, and thereafter claims that the unilateral act of submitting the application gives rise to a duty on the part of the recipient to act upon it without delay. The courts have generally held in those instances that the bank or insurance company has not undertaken to process the application, and therefore has no duty to do promptly that which it has no duty to do at all.

> The special circumstances in *Jacques*, which the court found created a contract and an implied promise to use reasonable care in the performance thereof, are not present here. First, the consideration paid by the plaintiffs in Jacques, which created a contract, does not exist here. Second, the bank made several promises specific to the Jacques (such as offering a $71,000 loan and locking in an interest rate), the sort of which were not made here. Third, the bank was made aware of the highly particular requirements of the Jacques' real estate contract.

*Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 779–80 (4th Cir. 2013).

In analyzing whether special circumstances exist sufficient to satisfy the intimate nexus test, the court finds additional guidance from *Parker v. Columbia Bank*, 91 Md. App. 346 (1992). The *Parker,* the Appellate Court of Maryland noted that "special circumstances 'may' exist where 'the bank knows or has reason to know that the customer is placing his trust and confidence in the bank and relying on the bank to counsel and inform him.'" *Id.* (quoting *Klein v. First Edina Nat'l Bank*, 293 Minn. 418, 196 N.W.2d 619, 623 (1972)). Additionally, relying on *Tokarz v. Frontier Federal Sav. & Loan Ass'n*, 33 Wash. App. 456, 656 P.2d 1089 (1982), the *Parker* court explained that special circumstances may also arise when "the lender '(1) took on any extra services on behalf of [the borrowers] other than furnishing the money for construction of a home; (2) received any greater economic benefit from the transaction other than the normal mortgage; (3) exercised

extensive control over the construction; or (4) was asked by [the borrowers] if there were any lien actions pending.'" *Parker*, 91 Md. App. at 370-71 (quoting *Tokarz*, 33 Wash. App. at 462). With this mind, the court is also mindful that "[c]ourts have been exceedingly reluctant to find special circumstances sufficient to transform an ordinary contractual relationship between a bank and its customer into a fiduciary relationship or to impose any duties on the bank not found in the loan agreement." *Id.* at 369. Ultimately, "in cases . . . where there are none of these special circumstances and no contractual basis for a special duty of care is alleged, a lender owes no duty of care to its borrower." *Id.* at 374.

Defendants contend that Plaintiff does not allege that Defendants were negligent in their performance of their duties under the original Mortgage; offers no admissible evidence to distinguish him from any other garden variety borrower seeking mortgage assistance; and presents no admissible evidence that Defendants provided incorrect information. (Defs.' Mot., ECF No. 61-1 at 11–12.) In response, Plaintiff argues that the loan modification process and Defendants' mortgage assistance program is premised on the underlying contractual relationship, which Plaintiff appears to contend gives rise to a tort duty. (Pl.'s Resp., ECF No. 63 at 15–16.) In addition, Plaintiff relies on communications between Plaintiff and Defendants to support a tort duty. *Id.* at 17–18.

The record before the court is devoid of evidence that Defendants owed Plaintiff a duty with regard to the RMA application. It is undisputed that the parties had a contractual relationship arising from the underlying Mortgage. And although "contractual privity" is sufficient to establish an "intimate nexus" between Plaintiff and Defendants—Plaintiff fails to generate a genuine dispute of material fact as to whether Defendants were negligent with respect to the underlying Mortgage. The absence of such fact is supported by Plaintiff's deposition testimony that the dispute between

the parties arose from Plaintiff's RMA application and Plaintiff did not believe Defendants breached any specific term of the Mortgage.  (Wesker Dep. 23:8–20.)  *See Neal v. Residential Credit Sols., Inc.*, No. CIV. JKB-11-3707, 2013 WL 428675, at *6–7 (D. Md. Feb. 1, 2013) (granting summary judgment on negligence claim where the negligence count is premised upon the defendant's failure to use due care in connection with the plaintiff's loan modification application and there is "no contractual basis to confer a tort duty of care on [the defendant] as to the loan modification application") (citing *Spaulding v. Wells Fargo Bank*, Civ. No. GLR–11–2733, 2012 WL 3025116, at *6 (D. Md. Jul.23, 2012) (plaintiffs and bank did not enter into implied or express contract for processing of loan modification application)); *Green v. Wells Fargo Bank, N.A.*, 927 F. Supp. 2d 244, 252 (D. Md. 2013) (dismissing negligence claims because, although the plaintiffs allege no negligence arising from mortgage contract relationship; rather, the plaintiffs' allegations pertain to "their request for loan modification, which was an entirely different transaction").

Nothing in the underlying Mortgage contract suggests that contractual privity exists as to the RMA application, as required by *Jacques v. First Nat'l Bank of Md.*, 307 Md. 527 (1986).[4] *See Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 803–804 (D. Md. 2013) ("[T]his case presents a typical, arm's-length creditor/debtor relationship founded on a mortgage loan. Plaintiffs

---

[4] Plaintiff directs the court to the Deed of Trust, Section 12 titled "Borrower Not Released; Forbearance By Lender Not a Waiver":

> Extension of the time for payment or modification of the amortization of the sums secured by the Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or refuse to extend payment or otherwise modify amortization of the sums secured by the Security Instrument by reason of any demand made by the original Borrower or Successor in Interest of Borrower.

(Defs.' Mot., Deed of Trust, Exhibit 2-B, ECF No. 61-3 at 23.)  It is unclear to the court how this language suggests contractual privity exists as to the RMA application.

have not identified any language—whether statutory or contractual—purporting to place a special duty of care on Defendants and have not alleged any 'extraordinary circumstances' counseling for the imposition of a tort duty."); *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 780 (4th Cir. 2013) (holding negligence claim fails because bank owed no duty to the plaintiffs where there was no consideration from the plaintiffs and bank made no promises); *Donnelly v. Branch Banking and Trust Co.*, 91 F. Supp. 3d 683, 696 (D. Md. 2015) (granting defense motion for summary judgment on negligence claim where "[p]laintiffs cannot point to any application fee or other additional consideration demanded by BB & T and provided by them with respect to the proposed modification agreement, and Taylor's vague statement does not provide a sufficient basis to obligate BB & T to continue approving loan modifications indefinitely absent any consideration from [p]laintiffs").   In sum, while the parties were in contractual privity with respect to the Mortgage, the Mortgage is not determinative of whether Defendants owed Plaintiff a duty of care in the processing of the RMA application; the Mortgage is not enough on its own.  And Plaintiff fails to generate a dispute of material fact as to the required extra dimension or special aspect to the parties' legal relationship that would give rise to the duty essential to support his negligence claims.  *See Neal and Green, supra.*

Plaintiff's reliance on Defendants' advertisement of the RMA program to suggest contractual privity exists is misplaced.  "[O]ffering extra-contractual loan modification is not one such service that creates a 'special circumstance,' and thus does not give rise to a duty on the part of the lender to the consumer."  *Ensor v. Wells Fargo Bank Nat'l Ass'n*, No. CV CCB-21-324, 2022 WL 345513, at *3 (D. Md. Feb. 4, 2022); *see Goss v. Bank of Am., N.A.*, 917 F. Supp. 2d 445, 452 (D. Md. 2013) (dismissing the plaintiffs' negligence and negligent misrepresentation claims because "the letter and subsequent actions of [the bank] did not even create an enforceable

contract or other nexus between [the bank] and the [plaintiffs'], beyond their mortgage agreement," therefore, the bank "owed no duty in tort to them in the processing of their [Home Affordable Modification Program] application"); *Farasat v. Wells Fargo Bank, N.A.*, 913 F. Supp. 2d 197, 207–208 (D. Md. 2012) (dismissing plaintiff's negligence and negligent misrepresentation claims because the bank does not owe plaintiff a duty in connection with alleged negligence arising loan modification application processing). The mere fact that Defendants advertised the RMA program does not give rise to a duty on the part of Defendants to Plaintiff; and, even when viewed in the context of the undisputed facts in their totality, as a matter of law, no duty arises. *See Ensor supra.*

Plaintiff also appears to take the position that the duty arose when Defendants allegedly: (1) solicited and allowed (or accepted) Plaintiff's RMA application when the Mortgage was purportedly a "will not modify mortgage;" (2) misrepresented that Plaintiff's payment obligation under the Mortgage was suspended during the pendency of the RMA application; and (3) induced Plaintiff to suspended payments while the RMA application was pending. (Pl.'s Resp., ECF No. 63 at 16–18; Amended Complaint, ECF No. 30 ¶¶ 52, 56–57.) Plaintiff's contentions have zero record support and the undisputed facts are rather to the contrary of Plaintiff's statements.

As set forth above, it is undisputed that Defendants advertised the RMA program and Plaintiff contacted SPS and requested mortgage assistance (Wesker Dep. 23:16–24:15; Simon Decl. ¶ 6; Phone Call from Wesker to Hamilton, ECF No. 61-3 at 4:1–7); SPS followed up with Plaintiff regarding inconsistences contained in the RMA submissions, and Plaintiff provided clarification (Simons Decl. ¶¶ 10–11, 13; Pl.'s Resp., Letters to SPS, Exhibit 4, ECF No. 63-4); SPS representatives expressly instructed Plaintiff to continue to make his monthly payments during the process (Phone Call from Wesker to Hamilton 12:8–14; Phone Call from Wesker to Sayers, 11:1–11; Phone Call from Wesker to Ramirez 4:18–21); Onslow Bay could have modified

the Mortgage; and SPS had authority (from Onslow Bay) to review and process RMA applications, including those related to the Mortgage.  (Bui Decl. ¶¶ 7, 9.)  Plaintiff offers no evidence to generate a factual dispute that Defendants: (1) solicited Plaintiff for the RMA program with knowledge of his ineligibility; (2) made material (or any) misrepresentations and/or omissions during or related to the RMA application process; and/or (3) induced Plaintiff to suspend payments while his RMA application was pending.[5]

In sum, Plaintiff has not produced evidence adequate to generate a triable issue as to whether contractual privity or special circumstances existed, and therefore, Defendants owed Plaintiff no duty in tort in the processing and/or handling of the RMA application.  *See Allen v. Bank of Am., N.A.*, 933 F. Supp. 2d 716, 732  (D. Md. 2013) (granting the defendant bank's motion for summary judgment on the plaintiffs' negligence claim because the plaintiffs failed to demonstrate "that the special circumstances exist to create a tort duty under their ordinary mortgage agreement with [the bank]"); *Parker v. Columbia Bank*, 91 Md. App. 346, 374 (1992) ("In sum, in cases like the one at hand where there are none of these special circumstances and no contractual basis for a special duty of care is alleged, a lender owes no duty of care to its borrower."); *Neal*, 2013 WL 428675, at *7 (granting summary judgment on negligence claim where there is "no special circumstances and no contractual basis to confer a tort duty of care on [the defendant] as to the loan modification application"); *Currie*, 950 F. Supp. 2d at 803–804 ("However, this case presents a typical, arm's-length creditor/debtor relationship founded on a mortgage loan. Plaintiffs have not identified any language—whether statutory or contractual—

---

[5] As discussed below, the mere fact that Plaintiff was determined ineligible for a modification on his original RMA application does generate a dispute of fact as to whether the Mortgage was purchased by Onslow Bay as a "will not modify mortgage."  Plaintiff contends that this is the case, but provides no evidence to support it other than his self-serving, unsworn contention.  *See* Section III.C., *infra.*

purporting to place a special duty of care on Defendants and have not alleged any extraordinary circumstances counseling for the imposition of a tort duty.").

Accordingly, the Motion will be granted as to Counts I and II.[6]

### C.    Fraud Claims—Counts III and IV

Plaintiff relies on the same allegations offered in support of his negligence claims to support his fraud claims in Counts III and IV.  That is, Plaintiff's fraud claims are premised on Defendants' alleged misrepresentations that: (1) Plaintiff's payment obligation under the Mortgage would be suspended while his RMA application was pending; and (2) the Mortgage was eligible for a modification.  (Amended Complaint, ECF No. 31 ¶¶ 65, 72.)  Defendants argue for summary judgment on Plaintiff's fraud claims because there is no evidence that Defendants made any false statements or omissions of fact.  (Defs.' Mot., ECF No. 61-1 at 16–20.)  Plaintiff counters that there is a dispute of material fact as to whether Defendants made misrepresentations with regard to his Mortgage.  (Pl.'s Resp., ECF No. 63 at 21–22.)

Plaintiff's fraud claims require proof of a false statement.  *Cooper v. Berkshire Life Ins. Co.*, 148 Md. App. 41, 56–57 (2002) (citations omitted) (explaining that to sustain a fraudulent misrepresentation claim, the plaintiff must prove "that the representation made is false"); *First Union Nat'l Bank v. Steele Software Sys. Corp.*, 154 Md. App. 97, 134 (2003) (explaining that a fraudulent inducement claim requires "that the representation made is false").

As set forth above, Plaintiff has not produced evidence adequate to generate a triable issue as to whether SPS representatives advised Plaintiff that his payment obligations were suspended while his RMA application was pending.  *See* Section III.B., *supra.*   Nor has Plaintiff produced

---

[6] Because the court concludes that Defendants owed Plaintiff no duty in tort, the court declines to address Defendants' remaining argument as to the standard of care and damages.

evidence to generate a triable issue as to whether SPS representatives advised him that the Mortgage was purchased as a "will not modify mortgage."  *See* Section III.B., *supra.*

Indeed, the undisputed facts before the court are that SPS representatives expressly advised Plaintiff to continue to make his monthly payments during the RMA application process.  (Phone Call from Wesker to Hamilton 12:8–14; Phone Call from Wesker to Sayers, 11:1–11; Phone Call from Wesker to Ramirez 4:18–21.)  In addition, it is undisputed that Onslow Bay could have modified the Mortgage; however, on review of Plaintiff's RMA application, "Onslow Bay did not authorize SPS to offer Plaintiff a loan modification because he did not meet the qualification criteria."  (Bui Decl. ¶¶ 7, 9.)  The mere fact that Plaintiff was found ineligible for a mortgage modification (originally) neither leads to, nor supports, the conclusion that his Mortgage was purchased as a "will not modify mortgage."  Simon's declaration attests:

> SPS' business records show that Plaintiff was repeatedly advised that the language in Exhibit H meant that had been reviewed but that the investor made the business decision not to offer him a loan modification at that time.
>
> Plaintiff's claims that on August 31, 2019, an SPS representative named Michael Parker told him that his loss mitigation application was denied because Onslow Bay purchased the Mortgage as a "will not modify mortgage," that he was "never eligible for a potential modification", and that the Mortgage "could not and would not ever be modified" are not consistent with SPS' business records which reflect that SPS representatives have repeatedly advised Plaintiff that his understanding of the situation was incorrect, that the Mortgage was already reviewed by the investor and that the investor denied the request for a modification. Plaintiff was further advised that the Mortgage was not purchased as a non-modifiable loan.

(Simon Decl. ¶¶ 15–16.)  Indeed, Defendants offered Plaintiff a mortgage modification at a later date.  (Bui Decl. ¶ 9; Defs.' Mot., January 30, 2020, Letter, Exhibit 2-I, ECF No. 61-3 at 71.)

Relying on an unauthenticated memo authored by Plaintiff (addressed to no one), Plaintiff contends that an SPS representative "advised that we were never eligible for a loan modification

19

because when the lender bought our mortgage they do so as a will not modify mortgage." (Pl.'s Resp., Exhibit 1, August 31 Memo, ECF No. 63-1.) This inadmissible averment is insufficient to create a genuine dispute of material fact to survive summary judgment. *See CoStar Realty Info., Inc. v. Field*, 737 F. Supp. 2d 496, 510 (D. Md. 2010) ("Gressett's allegation that Alliance agents told him that the Terms of Use did not apply to the License Agreement between CoStar and Alliance is hearsay without any evidentiary support, besides his self-serving deposition testimony, which is insufficient to create a genuine dispute of material fact on this claim to survive summary judgment.").

In the face of the clear, undisputed, admissible evidence that the Mortgage was modifiable, an unauthenticated, self-serving memo amounting to a "note to self" is insufficient to defeat the Motion. *See Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"); *Robinson v. Priority Auto. Huntersville, Inc.*, 70 F.4th 776, 780 (4th Cir. 2023) (explaining that "plaintiffs need to present more than their own unsupported speculation and conclusory allegations to survive" on summary judgment).

In sum, on the record before the court Plaintiff has not produced evidence adequate to generate a triable issue as to whether Defendants made false statements that his Mortgage payments were suspended while his RMA application was pending and/or that his Mortgage was purchased as a "will not modify mortgage." Accordingly, Defendants are entitled to judgment as a matter of law on Plaintiff's fraud claims (Counts III and IV).

D.    **Detrimental Reliance—Count V**

In Count V, Plaintiff asserts that "[b]y soliciting, facilitating, and ultimately accepting Plaintiff's application for a mortgage modification, Defendants promised that Plaintiff would be eligible for the mortgage assistance program." (Amended Complaint, ECF No. 31 ¶ 80.) Defendants argue that they are entitled to summary judgment because the "undisputed material facts show that Plaintiff was eligible to be considered for a loan modification; that he submitted multiple applications for such a modification; and that he was considered for such a modification on multiple occasions." (Defs.' Mot., ECF No. 61-1 at 22.) The court agrees.

Detrimental reliance, also known as "promissory estoppel[,] is a quasi-contractual claim, meaning 'it is an equitable remedy that permits recovery where, in fact, there is no contract, but where circumstances are such that justice warrants a recovery as though there had been a promise.'" *Ezzat v. UGI/Amerigas Corp.*, No. RDB-22-02918, 2023 WL 2864931, at *5 (D. Md. Apr. 10, 2023) (quoting *Odyssey Travel Ctr., Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 626 (D. Md. 2003). Promissory estoppel requires four elements: "(1) a clear and definite promise; (2) where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee; (3) which does induce actual and reasonable action or forbearance by the promisee; and (4) causes a detriment which can only be avoided by the enforcement of the promise." *St Michaels Media, Inc. v. Mayor and City Council of Baltimore*, No. ELH-21-2337, 2023 WL 2743361, at *40 (D. Md. Mar. 31, 2023).

There is no evidence in the record to suggest that Defendants made a clear and definite promise that Plaintiff would be eligible for a mortgage modification and/or that his Mortgage payments were suspended while his RMA application was pending. *See* Section III.B., *supra.* Rather, the undisputed facts are that Plaintiff was eligible to be considered for a loan modification

and at all times Onslow Bay could have modified the Mortgage (Bui Decl. ¶ 9); and SPS had contractual authority to review and process RMA applications, including those related to the Mortgage.  (Bui Decl. ¶¶ 7, 9.)  Plaintiff asserts there was "an express offer [by Defendants] to provide mortgage assistance" (Pl.'s Resp., ECF No. 63 at 16), but nothing in the record before the court supports any such conclusion.  To the contrary, as Plaintiff testified at deposition:

> Q.   Okay. In March 2019, or any time after that, did they actively advertise to you a modification?
>
> A.   I don't know what you mean by advertise. I think they actively sent us correspondence that included this — that this was a — these were the assistance — various assistance options including —
>
> Q.   Okay.
>
> A.   — mortgage modification.
>
> Q.   And in those -- in any of those  communications did they say you were entitled to a mortgage modification?
>
> A.   No.
>
> Q.   Did any –
>
> A.   Well, they didn't say that were entitled to a modification.
>
> Q.   Okay.
>
> A.   That we were entitled to apply for a modification.
>
> Q.   Okay. And were the communication – did they say you may not qualify?
>
> A.   Yes.
>
> Q.   Okay. Did they –
>
> A.   You know, I don't know if that's in the documents or not.  I will say that I – I assume – I don't assume that I'm going to qualify.

| Q. | Okay. |
|---|---|
| A. | So I just don't know what the documents actually say. I'm — so my answer would be the documents speak for themselves. |
| Q. | Uh-huh. |
| A. | Certainly it was my assumption that I may not qualify. |

(Wesker Dep. 31:6–32:17.)

In sum, Plaintiff fails to generate a genuine dispute of material fact as to whether Defendants promised Plaintiff that he would be, or was, eligible for a mortgage modification. Nothing in record – no matter how liberally construed – amounts to a clear and definite promise by Defendants.  Accordingly, the Motion will be granted as to Count V.

### E.       MCPA Claim—Count VIII

In Count VIII, Plaintiff relies on the same set of allegations as those set forth in his negligence and fraud claims.  Plaintiff alleges that Defendants solicited Plaintiff for the RMA program, omitted the material information regarding his Mortgage modification status, and encouraged and allowed Plaintiff to apply for such assistance – and continued the process over the course of months with knowledge that Plaintiff was ineligible for assistance the whole time. (Amended Complaint, ECF No. 31 ¶ 104.)  Defendants argue they are entitled to summary judgment because there is no dispute of material fact that Defendants engaged in any deceptive or unfair practice.  (Defs.' Mot., ECF No. 61-1 at 23.)

An MCPA claim requires three elements: "(1) the defendant engaged in an unfair or deceptive practice or misrepresentation, (2) the plaintiff relied upon the representation, and (3) doing so caused the plaintiff actual injury."  *Turner v. JPMorgan Chase, N.A.*, No. TDC-14-0576, 2015 WL 5021390, at *4 (D. Md. Aug. 21, 2015) (citing *Currie v. Wells Fargo Bank*, 950 F. Supp.

2d 788, 796 (D. Md. 2013)).   "Among other things, it is unlawful under the MCPA for a person to use unfair or deceptive trade practices related to the extension of consumer credit or the collection of consumer debts." *Hebbeler v. First Mariner Bank*, No. ELH-17-3641, 2018 WL 3818855, at *6 (D. Md. Aug. 10, 2018) (citing MD. CODE ANN. COM. LAW § 13-301 (2023)).   MD. CODE ANN. COM. LAW § 13-301(1) "defines unfair or deceptive trade practices as, *inter alia*: (1) 'False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;' and (2) 'Failure to state a material fact if the failure deceives or tends to deceive.'" *Id.* (quoting MD. CODE ANN. COM. LAW § 13-301(1)).   "Both misrepresentation and omission claims are 'unfair or deceptive' trade practices under the MCPA." *Bank of America, N.A. v. Jill P. Mitchell Living Trust*, 822 F. Supp. 2d 505, 535 (D. Md. 2011).   "Likewise, misrepresentation and omission claims are both subsets of common law fraud." *Id.*

As set forth above, the undisputed record before the court is that Onslow Bay could have modified the Mortgage (Bui Decl. ¶¶ 7, 9); and that SPS told Plaintiff to continue to make his monthly payments during the process.  (Phone Call from Wesker to Hamilton 12:8–14; Phone Call from Wesker to Sayers, 11:1–11; Phone Call from Wesker to Ramirez 4:18–21.)  Plaintiff fails to generate a genuine dispute of material fact as to whether Defendants made misrepresentations that his payment obligations were suspended while his RMA application was pending or that Defendants solicited him for the RMA program knowing his Mortgage could not be modified. Accordingly, for the same reasons Defendants are entitled to judgment as a matter of law on Plaintiff's fraud claims, Defendants are entitled to judgment as a matter of law as to Plaintiff's MCPA claim (Count VIII).

In view of the foregoing, the court declines to address Defendants' remaining arguments regarding damages.

**IV.**    <u>**CONCLUSION**</u>

For the reasons set forth herein, by separate order, Defendants' Motion for Summary Judgment (ECF No. 61) is granted.


/S/
_____
Julie R. Rubin
United States District Judge

September 19, 2024